IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

EARNEST L. PARMENTER                                           PLAINTIFF

                 v.                  Civil No. 04-2219

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                           DEFENDANT

**MEMORANDUM OPINION**

**Factual and Procedural Background:**

       Earnest Parmenter, the plaintiff in this case, has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying his application for disability insurance benefits (hereinafter "DIB"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*.

       Both parties have filed appeal briefs (Doc. #4 & 5). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

       The history of the administrative proceedings is contained in the respective appeal briefs and will not be recounted here except as necessary. However, it should be noted additional evidence was submitted for consideration by the Appeals Council, after the date of the administrative hearing but before the issuance of the ALJ decision (T. 302-323). This evidence includes medical records from James W. Long, M.D., dated November 26, 2002 through May 3, 2003. On July 30, 2004, the Appeals Council considered the additional evidence, but concluded that the evidence did not provide a basis for changing the ALJ's decision (T. 6-10).

Plaintiff was 35 years of age at the time of the administrative hearing and has a high school education (T. 328, 82, 88).  He has worked in the past as a school custodian and yard maintenance worker (T. 328-329).  Plaintiff claims disability due to: hypertension; non insulin dependent diabetes mellitus; low back pain; nephrotic syndrome; impaired vision; avascular necrosis of the left hip; headaches; sleep apnea; fatigue; edema; numbness; and, obesity.  He protectively filed his application on April 30, 2001 (62-65).

The Social Security Administration denied plaintiff's applications initially and on reconsideration.  He then requested and received a hearing before an Administrative Law Judge (hereinafter "ALJ"), which hearing was held on April 30, 2002 (T. 326-346).  During the hearing, the plaintiff amended his onset date to January 10, 2001 (T. 327).  The ALJ rendered an unfavorable decision on July 24, 2002 (T. 23-34).  As has been noted, by Order entered July 24, 2004, after receiving and considering additional evidence, the Appeals Council denied the plaintiff's Request for Review of the hearing decision, thus making the ALJ's decision the final decision of the Commissioner.  Plaintiff now seeks judicial review of that decision (Doc. #1).

In his written decision, the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the amended onset date (T. 32).  Further, the ALJ found that the medical evidence establishes that plaintiff has severe impairments, including: lumbar spine pain secondary to lumbar spondylosis; adult onset diabetes mellitus; and, sleep apnea, all of which are aggravated by his obesity.  Additionally, the ALJ noted that plaintiff has been diagnosed with nephrotic syndrome[1] (T. 25).  However, the ALJ concluded that plaintiff does

---

[1] Nephrotic syndrome is defined as a predictable complex that results from a severe, prolonged increase in glomerular permeability for protein. *The Merck Manual, p. 1865 (17th Edition, 1999)*.

AO72A
(Rev. 8/82)

not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. It was determined that plaintiff's subjective complaints and alleged nonexertional limitations are not totally credible. The ALJ concluded that the plaintiff has the residual functional capacity (hereinafter "RFC"), to perform work-related activities at the full range of sedentary work (T. 33). At step four, the ALJ found plaintiff is unable to perform any of his past relevant work. Finding further, the ALJ stated:

> Based on an exertional capacity for sedentary work, and the claimant's age, education and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.28.

(T. 33). Thus, the ALJ determined that the plaintiff was not under a disability at any time through the date of the decision (T. 33).

The Commissioner's decision denying benefits will be affirmed if it is supported by substantial evidence on the record as a whole. See *Clark v. Apfel, 141 F.3d 1253, 1255 (8th Cir.1998); Ghant v. Bowen, 930 F.2d 633, 637 (8th Cir.1991)*; 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support [the Commissioner's] decision." *Cox v. Apfel, 160 F.3d 1203, 1206-07 (8th Cir.1998)*. In determining whether existing evidence is substantial, this court looks at both evidence that supports and evidence that detracts from the Commissioner's decision. See *id. at 1207;* see also *Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir.1999)*.

In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council. See *Jenkins v. Apfel, 196 F.3d 922, 924 (8th Cir.1999) (citing Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994))*. Thus, in situations such as the present, this court's

AO72A
(Rev. 8/82)

role is to determine whether the ALJ's decision "is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." *Riley v. Shalala, 18 F.3d at 622.* In practice, this requires a decision as to how the ALJ would have weighed the new evidence had it existed at the initial hearing. *See id.* As the United States Court of Appeals for the Eighth Circuit has often noted, "this [is] a peculiar task for a reviewing court." *Id.* Critically, however, this court may not reverse the decision of the ALJ merely because substantial evidence may allow for a contrary decision. *See Woolf v. Shalala,* 3 *F.3d 1210, 1213 (8th Cir.1993).*

An individual is "disabled" under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).* The burden of establishing a compensable disability under the Act is initially on the claimant. See *Kerns v. Apfel, 160 F.3d 464, 466 (8th Cir.1998); Riley v. Shalala, 18 F.3d at 621 (quoting Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)).* However, the submission of the additional evidence to the Appeals Council complicates the analysis; thus, this court now turns to that additional evidence.

**Discussion:**

*20 C.F.R. § 404.970(b)* provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing

AO72A
(Rev. 8/82)

decision.

Thus, the Appeals Council *must* consider evidence submitted with a request for review if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Box v. Shalala, 52 F.3d 168, 171 (8th Cir.1995) (quoting Williams v. Sullivan, 905 F.2d 214, 216-17 (8th Cir.1990))*. To be "new," evidence must be more than merely cumulative of other evidence in the record. *See Williams v. Sullivan, 905 F.2d at 216* (concluding that psychiatrist's report was new because it was not merely cumulative but instead presented more specific findings and conclusions). To be "material," the evidence must be relevant to claimant's condition for the time period for which benefits were denied. *See id.* Thus, to qualify as "material," the additional evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition. *See Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir.1997)* (holding immaterial evidence detailing a single incident occurring after decision and noting proper remedy for post-ALJ deterioration is a new application); *Williams v. Sullivan, 905 F.2d at 216* (finding that despite failure to identify onset date, doctor's report was material because it provided sufficient basis to conclude it related to the relevant time). Further, there must be a reasonable likelihood that it would have changed the determination. *Krogmeier v. Barnhart 294 F.3d 1019, 1025 (8th Cir.2002)*.

In the instant matter, the ALJ stated in his decision:

The claimant alleges that he suffers with chronic and severe low back, left hip and leg pain. In addition, he also alleges that his legs swell to the extent that it is painful for him to stand or walk for extended periods. Furthermore, he alleges that the residuals of adult onset diabetes mellitus and sleep apnea syndrome cause him limitations. The record reveals that the claimant has a history of sustaining an injury to his low back in 1998 wherein a tree fell on the middle of his back.

(T. 25-26).

The record contains numerous citations referencing the plaintiff's left hip pain (T. 95, 101, 106, 126, 127, 162, 217, 237, 247, 248, 255, 290). The ALJ does not specifically address the issue of avascular necrosis, because that particular diagnosis was not rendered by Dr. Long until December 10, 2002 (T. 321-323). The ALJ had issued his decision some four and one half (4 ½) months prior to that date. However, the evidence of left hip and thigh pain, as well as the documentation of a limp/antalgic gait, is replete throughout the record. Clearly, plaintiff not only alleged a lower back injury and low back pain, sometimes described as involving the sacroiliac or the iliac crest (T. 309, 287, 322, 321, 314, 310, 309, 334, 338, 117-120, 121, 122, 126, 128, 158, 161, 167, 174-175, 228-229, 237, 243, 254, 257, 289), but he also asserted left hip and lower extremity pain, as indicated above. The ALJ did not address this impairment.

In his decision, the ALJ relies heavily upon the lack of objective medical evidence in discussing the plaintiff's low back injury[2] (T. 26-30). Nonetheless, it is important to note the following:

**AVASCULAR NECROSIS**

Pathologic changes are characterized by cell death in bone resulting from compromised blood supply. The magnitude of avascular necrosis is a function of the degree of circulatory compromise. The femoral head (hip) is most commonly involved; ...

\* \* \*

**Epidemiology**
The peak incidence is between ages 30 and 60.

\* \* \*

---

[2] As has been noted, the ALJ did not discuss the plaintiff's left hip pain/condition.

AO72A
(Rev. 8/82)

> **Symptoms and Signs**
> For some patients, pain starts suddenly - patients remember the day and hour when they first perceived sudden, severe, incapacitating pain - presumably at the time of initial vascular obliteration and before any bony collapse. For other patients, the initial insult is asymptomatic. Most later develop mechanical pain as the femoral head (or other involved bone) collapses. Such pain is induced by standing, walking, moving, coughing, or other mechanical stress and is largely relieved by rest.
>
> * * *
>
> **Avascular necrosis of the femoral head**
> presents as groin pain that intermittently radiates down the anteromedial thigh. Patients may demonstrate antalgic gait, gluteus minimus limp, or limited range of motion, especially in flexion, abduction, and internal rotation, with a distinct click elicited by external rotation of the flexed abducted hip, particularly when moving from a sitting position.
>
> **Diagnosis**
> Early diagnosis requires a high index of suspicion in patients presenting with pain, particularly of the hips, knees or shoulders.
> Diagnostic testing depends on the stage of the disease. MRI is the most sensitive and specific technique and should be used for very early diagnosis, when collapse of the femoral head or other bone may be preventable. If duration of disease is not clear, an x-ray or CT scan should be obtained to rule out advanced disease. Bone scanning more sensitive than x-ray but is nonspecfic and is used less often than MRI.
> **X-ray findings may not become apparent for months to up to 5 years after symptom onset**.

*The Merck Manual, p. 453-454 (17th Edition, 1999).* (emphasis supplied).

Additional evidence submitted to, and considered by the Appeals Council, contains clear objective evidence and a diagnosis of avascular necrosis, as early as November 26, 2002, just four (4) months after the ALJ rendered his decision (T. 323), and over one and one half (1 ½) years before the Appeals Council denied the request for review (T. 6-10). MRI findings on that date were found to be "worrisome for avascular necrosis in the left hip" (T. 323). X-rays

taken on December 2, 2002 showed a cystic lesion with some surrounding bony sclerosis in the femoral head "consistent with avascular necrosis on the left side only." (T. 322).

On December 10, 2002, Dr. Long opined, in part:

> His treatment options were explained and core decompression of the femoral head and neck was discussed along with hip arthroplasty. He still has sphericity of the femoral head and core decompression is a consideration particularly because he is thirty-five years old. He is also morbidly obese. He does not have avascular necrosis that has been defined in the right hip so far and he has no symptoms there.

(T. 321). On December 23, 2005, progress notes of Dr. Long reveal:

> The treatment options for his avascular necrosis of the left hip were discussed. ...He is extremely obese and a core decompression is not really recommended. It could be tried, but it would probably just add another surgical procedure and is felt to have less than a 50% chance of being of any benefit long-term. A hip replacement is felt required and that was discussed with him again at length. He has also been seen recently by Dr. Martimbeau and he reports that he also recommended a hip replacement. I discussed this also with Dr. Mumme and it is a difficult choice to make in a person of his age, but it is probably the best approach. He has a reasonable chance however that he would require some type of revision surgery long-term simply because of his age.

(T. 320). The surgery was performed on February 13, 2003 (T. 318-319).

Based on the foregoing, the undersigned finds that the ALJ's decision is not supported by substantial evidence of record, which now includes the evidence submitted to the Appeals Council. Further, the undersigned finds that there is a reasonable likelihood that this new and material evidence would have changed the ALJ's decision, particularly with respect to his reliance solely upon the Medical-Vocational Guidelines, in making his determination.

**Conclusion:**

Accordingly, the decision of the ALJ, denying benefits to the plaintiff, is not supported by substantial evidence, and should be reversed. This is especially true in light of the

AO72A
(Rev. 8/82)

additional evidence submitted to the Appeals Council, which was not before the ALJ when he rendered his decision. This matter should be remanded to the Commissioner, for further consideration of the plaintiff's residual functional capacity, particularly in light of the additional evidence which is now a part of the administrative record, and evaluation of the numerous asserted nonexertional limitations, including, but not limited to: sleep apnea (T. 339, 132-133, 146, 314, 49, 89, 121, 129); fatigue (T. 338, 149, 87, 129, 146, 149, 199); edema (T. 157, 244, 266, 264, 259, 184, 239, 299, 335-336, 45, 156, 49, 76, 87, 103, 189, 190, 194-198, 213, 215, 220, 221, 222, 241, 243, 245, 270, 274); and, numbness (T. 123, 125, 243). The Commissioner is also directed to take the plaintiff's obesity into consideration, and discuss how this condition affects the plaintiff, in combination with the other asserted impairments (T. 259, 321, 318, 313, 309, 146, 156, 157, 181, 148, 149, 341, 320, 301, 257, 266, 264, 299).

ENTERED this 18th day of October, 2005.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)